## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                         No. CR 12-2053 JB

LEONEL ARMENDARIS JR.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed Dec. 28, 2012 (Doc. 28)("Sentencing Memo."). The Court held a sentencing hearing on January 16, 2013. The primary issue is whether the Court should sentence Defendant Leonel Armendaris, Jr. at the low end of the guidelines. For reasons stated on the record at the hearing and further herein, the Court grants Armendaris' request for a sentence at the low end of the guidelines. The Court commits Armendaris, Jr. to the custody of the Bureau of Prisons for a term of 51 months.

## FACTUAL BACKGROUND

Armendaris, Jr.'s parents came to the United States of America on valid work visas about twenty years ago. See Sentencing Memo. at 2. Armendaris, Jr. is a legal permanent resident of the United States. See Presentence Investigative Report at 2, disclosed Nov. 21. 2012 ("PSR") Armendaris, Jr. has not lived in Mexico since he was a small baby. See PSR ¶ 46, at 10. Armendaris, Jr.'s parents have been hard-working, honest people, who have legal residence in this country. They worked hard to raise and support their family. See Sentencing Memo. at 2.

To his Sentencing Memorandum, Armendaris, Jr. has attached his handwritten statement.

<u>See</u> Letter from Leonel Armendaris, Jr., filed Dec. 28, 2012 (Doc. 28-1)("Armendaris, Jr. Letter"). Armendaris, Jr.'s letter is candid and detailed.   It reflects more about what brings him before the Court than Armendaris, Jr. may know.   Armendaris, Jr.'s writing to the Court reflects the casual innocence of a second generation American, whose parents tolerated and overcame so much, and with pride, gave Armendaris, Jr. a life much different than their own.   <u>See</u> Armendaris, Jr. Letter at 1-5.

Unfortunately, the efforts of Armendaris, Jr.'s parents may have oddly enabled him by blinding him to the gravity of the consequences his poor choices can bring.   Armendaris, Jr. accepted a job to carry drugs for a payment because of the economic hardship that he was experiencing.   <u>See</u> Armendaris, Jr. Letter at 3-4.   At twenty-one years old, Armendaris, Jr. did not fully understand the level of risk that he was assuming by accepting this seemingly simple task. <u>See</u> Armendaris, Jr. Letter at 4.

In his letter to the Court, Armendaris, Jr. relates that his decision to transport drugs was based on his inability to get a job in his field, medical services, and the lack of work in construction.   <u>See</u> Armendaris, Jr. Letter at 3-4.   He also describes having financial troubles that seemed great at the time.   For these reasons, Armendaris, Jr. accepted the offer from a former high school classmate to carry drugs for money -- not to become a drug dealer -- but to make some money to help his temporary financial situation.   <u>See</u> Sentencing Memo. at 1.

On August 10, 2012, a Drug Enforcement Administration ("DEA") agent observed Armendaris, Jr. board a Greyhound Bus in Albuquerque, New Mexico.   Armendaris, Jr. initially took a seat, but then stood up, removed a soft-sided black suitcase from the overhead luggage compartment, and placed the suitcase in the aisle directly beside him before sitting back down. <u>See</u> PSR ¶ 13, at 4.   The agent approached Armendaris, Jr., and Armendaris, Jr. gave the agent

consent to speak with him and to search his suitcase.   See id. ¶ 13-14, at 4.   The agent found a false compartment inside the suitcase and noticed what he believed to be narcotics inside the compartment.   See id. ¶ 14, at 4.   After some questioning, Armendaris, Jr. stated: "I'm going to come clean with you, there's stuff in here."   Id. ¶ 15, at 4.   Armendaris, Jr. further stated that by "stuff" he meant "drugs."   Id.   The agent and Armendaris, Jr. then left the bus and proceeded to a private room inside the Greyhound Bus station, with the suitcase.   Inside the bus station, Armendaris, Jr. further stated: "This is my first time doing this shit, and I'm out of a job.   There is shit in there, I don't know what it is, I was supposed to carry the bag to Indiana and leave it there and then go back."   PSR ¶ 15, at 5.   The agent removed the backside of the suitcase and found a clear, crystal-like substance, which the agent believed was illegal narcotics.   The agent then arrested Armendaris, Jr..   See id.   Later, at the DEA Office in Albuquerque, Armendaris, Jr. admitted that he was aware that methamphetamine was inside the suitcase, and he had agreed to transport the drugs from Phoenix, Arizona, to Indianapolis, Indiana, in exchange for $1,000.00. See id. ¶ 16, at 5.   Armendaris, Jr. also admitted that this trip was the second time he had transported drugs for the same individual.   See id. ¶ 17, at 5.

## PROCEDURAL BACKGROUND

A one-count Indictment charges Armendaris, Jr. with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine.   See Indictment, filed Aug. 21, 2012 (Doc. 13).   On October 9, 2012, Armendaris, Jr. pled guilty to the charge in the Indictment with a plea agreement.   See Plea Agreement, filed Oct. 9, 2012 (Doc. 21).

The United States Probation Office ("USPO") accurately calculated Armendaris, Jr.'s total offense level to be 24.   PSR ¶ 33, at 7.   Armendaris, Jr.'s base offense level is 31, pursuant to

U.S.S.G. § 2D1.1, because he is convicted for having conspired to traffic a mixture or substance containing at least 150 grams, but less than 500 grams of methamphetamine, and because Armendaris, Jr. receives a mitigating role adjustment, pursuant to U.S.S.G. § 2D1.1(a)(5)(B). See PSR ¶ 24, at 6-7.   Armendaris, Jr. also receives a 2-level reduction, pursuant to U.S.S.G. § 2D1.1(b)(16), because he satisfies the factors set forth in U.S.S.G. §§ 5C1.2(1)-(5).   See PSR ¶ 25, at 7.   Armendaris, Jr. receives a 2-level reduction for being a minor participant, pursuant to U.S.S.G. § 3B1.2(b), as the USPO concludes that he was acting only as a courier.   See PSR ¶ 27, at 7.   Armendaris, Jr.'s adjusted offense level is therefore 27.   See PSR ¶ 29, at 7.   Armendaris, Jr. also receives a 2-level reduction for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).   See PSR ¶ 31, at 7.   Armendaris, Jr. also receives a 1-level reduction for having assisted the authorities in the investigation and prosecution of his misconduct, by timely notifying the authorities of his intention to enter a guilty plea.   See PSR ¶ 32, at 7.

Armendaris, Jr. has one criminal history point, derived from a 2010 theft in Maricopa County, Arizona.   Armendaris, Jr. stole a voltage meter from the home of a woman for whom he was doing maintenance.   Armendaris, Jr. was convicted, on March 9, 2011, and sentenced to 364 days of probation and 30 hours of community service.   See PSR ¶ 36, at 8.   With one criminal history point, Armendaris, Jr.'s criminal history category is I.   See PSR ¶ 38, at 8.   With an offense level of 24 and a criminal history category of I, Armendaris, Jr.'s guidelines imprisonment range is 51 to 63 months.   See PSR ¶ 67, at 14.

Armendaris, Jr. filed a Sentencing Memorandum for the Court's review and consideration to aid the Court in arriving at a fair, just, and reasonable sentence in accordance with 18 U.S.C. § 3553(a), and United States v. Booker, 543 U.S. 220 (2005).   See Sentencing Memo. at 1. Armendaris, Jr. requests that the Court impose a sentence of 51 months of incarceration as a fair

and just sentence.   See Sentencing Memo. at 3.   The United States recommends a sentence at the low end of the guidelines sentencing range.   See United States' Response to Defendant's Sentencing Memorandum at 2, filed Jan. 3, 2013 (Doc. 29)("Response").

## ANALYSIS

In his telling of his story and of his realization that he will not be able, based upon his crime, to meet the expectations that he and his family had for him, the Court sees a naiveté.   Even though his future has been significantly and negatively impacted, Armendaris, Jr. writes about how his actions have hurt others as his greatest regret.   What is also evident in the writing Armendaris, Jr. sent to the Court is that, in recognizing his mistake, he has resolved to overcome its consequences.   He writes about how others, from his siblings to society in general, view him. Relying on his family and on his faith, Armendaris, Jr. appears to understand the task that he faces in becoming a person of whom his family can be proud.   Armendaris, Jr.'s naiveté is a characteristic upon which the drug dealers most likely preyed when they hired him for his trip.

For Armendaris, Jr., the consequences of his actions are a life-altering sentence.   Once he finishes his incarceration, he will have the task of starting a life in what is to him a foreign land. While this event will be life altering, Armendaris, Jr. states that he will not allow it to be his life-defining event.   The circumstances, including the collateral consequences of removal to Mexico, warrant a sentence at the low end of the guidelines of 51 months of incarceration.   For reasons stated on the record at the hearing and herein, the Court sentences Armendaris, Jr. to 51 months of incarceration.

**IT IS ORDERED** that the request set forth in the Defendant's Sentencing Memorandum, filed Dec. 28, 2012 (Doc. 28), is granted.   Defendant Leonel Armendaris, Jr. is committed to the custody of the Bureau of Prisons for a term of 51 months.

- 5 -

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzalez
   United States Attorney
Louis E. Valencia
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

James C. Loonam
   Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

     *Attorney for the Defendant*